**E-FILED**
Wednesday, 27 January, 2010 12:23:23 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

_____

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY ) <br> OF SOUTH CAROLINA, ) <br>  ) <br> Plaintiff, ) <br> v. ) <br>  ) <br> CITY OF PARIS, GENE RAY, ) <br> JAMES PARRISH, AND GORDON ) <br> RANDY STEIDL, HERBERT WHITLOCK ) <br>  ) <br> Defendants. ) | Case No. 07-CV-2224 |

_____

ALLIANZ GLOBAL RISKS US )
INSURANCE COMPANY, )
   )
      Plaintiff-Intervenor )
   )
v. )
   )
CITY OF PARIS, GENE RAY, )
JAMES PARRIS, AND GORDON   )
RANDY STEIDL, HERBERT WHITLOCK )
   )
      Defendants. )

**CONSOLIDATED WITH**

WESTERN WORLD INSURANCE GROUP,)
   )
      Plaintiff, )
   )
v. )
   )
SELECTIVE INSURANCE COMPANY )
OF SOUTH CAROLINA and )
MONTICELLO INSURANCE )
COMPANY n/k/a ALLIANCE )
GLOBAL U.S., )
   )
      Defendants. )

## OPINION

This case comes before the court for ruling on (1) the Motion for Summary Judgment (#66) filed by Plaintiff Selective Insurance Company of South Carolina (Selective); (2) the Motion for Summary Judgment (#84) filed by Plaintiff Western World Insurance Group (Western); and (3) the Motion for Summary Judgment (#94) filed by Plaintiff-Intervenor Allianz Global Risks U.S. Insurance Company (Allianz). For the following reasons, Selective's Motion for Summary Judgment (#66) and Allianz's Motion for Summary Judgment (#94) are both GRANTED in full. Western's Motion for Summary Judgment (#84) is DENIED.

### FACTUAL BACKGROUND

This case arises out of the arrest, prosecution, conviction and imprisonment of Gordon Randy Steidl and Herbert Whitlock for the 1986 Edgar County murders of Dyke and Karen Rhoads. Steidl and Whitlock were tried and convicted in 1987. On June 17, 2003, this court granted Steidl's petition for a writ of habeas corpus under 28 U.S.C. § 2254 and gave the State 120 days to release or retry Steidl. Steidl v. Walls, 267 F.Supp.2d 919 (C.D. Ill. 2003). The State of Illinois decided not to retry Steidl. Steidl was released from custody in 2004. Whitlock was released from custody in January 2008, based upon a decision by the Illinois Appellate Court. People v. Whitlock, No. 4-05-0958 (Ill. App. Ct. 2007).

In his complaint, Steidl alleged a claim under 42 U.S.C. § 1983 for deprivation of his right to a fair trial and for wrongful conviction. Steidl also alleged a § 1983 Monell claim against the City

of Paris.[1]  Steidl also alleged a state claim for false imprisonment, alleging that he was imprisoned without probable cause by Ray, Parris, Eckerty, and McFatridge.  In this claim, Steidl alleged that the acts of the Defendants were willful and wanton.  In the facts section of the complaint, Steidl alleged that, in March 2004, Illinois Attorney General Lisa Madigan announced that she would not appeal this court's order vacating Stiedl's conviction and allowing the State 120 days to retry him. Steidl alleged that, at that time, McFatridge made additional false public statements, reciting false evidence in an effort to influence prosecutors to hold Steidl in custody and retry him.  Steidl alleged that he was held in custody until May 28, 2004, in part because of McFatridge's public statements.

Steidl also alleged a state law claim for malicious prosecution.  He alleged that Ray, Parris, McFatridge, and Eckerty initiated a malicious prosecution without probable cause against him and continued that prosecution without probable cause.  Steidl alleged that the prosecution was ultimately terminated in his favor.  Steidl alleged that the actions were done in a willful and wanton manner.[2]

On April 8, 2009, Whitlock filed an amended complaint against the same defendants.  The case is before Senior U.S. District Court Judge Harold A. Baker as 08-CV-2055, and contains many of the same allegations, including false imprisonment and malicious prosecution.

---

[1] The claim is based upon Monell v. Dep't of Social Servs., 436 U.S. 658 (1978), which held that a municipality may be liable for a constitutional deprivation, under certain circumstances.  Waters v. City of Chicago, 580 F.3d 575, 580 (7th Cir. 2009).  Steidl alleged that the actions of Ray, Parris, McFatridge, and Eckerty were done pursuant to one or more interrelated de facto policies, practices, and customs of the City, its Police Department, and police chiefs, together with the Edgar County State's Attorney and its office, which was acting pursuant to, and as an agent of, the City of Paris.

[2] Steidl included other state law claims which are not relevant to the issues before this court.

The Insurance Companies and Their Policies

There are three insurance companies involved in this case that provided coverage to the City of Paris between the 1986 arrests of Steidl and Whitlock and their eventual exoneration and release in 2004 and 2008. The companies provided consecutive polices: Western from 1985 to 1996, Allianz[3] from 1996 to 1999, and Selective from 1999 to 2007.

The City of Paris was insured by Western during the time Steidl and Whitlock were arrested and prosecuted. Western's policy includes a provision a provision in its Law Enforcement Officers Liability insurance policy which stated, "[t]he insurance under this policy shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under another policy or otherwise." Because of this provision, Western has argued that it is an "excess" insurer to Selective's and Allianz's primary insurance.

The policy issued by Selective provided several different types of coverage to the City of Paris. Only the Police Professional Liability Coverage and Umbrella Liability Coverage are at issue in this litigation. The Police Professional Liability coverage provided coverage for "personal injury" arising out of "[f]alse arrest, detention, or imprisonment" and "[m]alicious prosecution." The policy stated that the insurance "applies to 'personal injury' only if caused by an offense: [c]ommitted in the 'coverage territory' during the policy period; and [a]rising out of the conduct of your law enforcement activities." Selective's Umbrella Policy provided that it was not triggered unless coverage was afforded by the Underlying Police Policy. The Police Professional Liability policies

---

[3]Monticello actually provided the coverage from 1996 (possibly 1995, but the 1995-1996 policy could not be located by the parties) to 1999, but Allianz is Monticello's successor in interest, so for simplicity's sake, Monticello will be referred to as Allianz throughout this opinion.

issued by Allianz were similar to the policy issued by Selective and stated that coverage was provided for occurrences during the policy period.

## PROCEDURAL HISTORY

On December 5, 2007, Plaintiff Selective filed its Complaint for Declaratory Judgment (#1) against Defendants City of Paris, Ray, Parrish, and Steidl seeking a declaratory judgment from this court that it has no duty to defend Defendants City of Paris, Ray, and Parrish against two 42 U.S.C. § 1983 lawsuits brought by Steidl and Herbert Whitlock. Selective argued that the occurrences alleged in the underlying litigation occurred outside of Selective's policy period. On March 18, 2009, Selective filed a Motion for Summary Judgment (#66). Defendants filed their Response (#81) to the summary judgment motion on May 13, 2009.

Allianz filed as Plaintiff-Intervenor a Motion to Intervene (#31) on June 6, 2008, noting that Defendant City of Paris tendered the Steidl and Whitlock action to Allianz for defense and indemnity, and that Allianz, like Selective, had been providing a defense to the City of Paris defendants subject to a full reservation of rights. Allianz claimed that the City of Paris was seeking coverage under both Selective and Allianz policies for liability arising out of the same operative facts and that, given the substantial similarity in language between the Selective and Allianz police policies, Allianz's proposed claim for declaratory relief involved common questions of law and fact with Selective's amended complaint for declaratory judgment. Allianz was allowed to intervene and, on August 17, 2009, filed its own Motion for Summary Judgment (#94), asking this court to grant it summary judgment and find that it has no duty to defend or indemnify Defendants because, like Selective, the occurrences alleged in the Steidl and Whitlock lawsuits that gave rise to the litigation occurred outside of Allianz's policy period.

On May 27, 2008, Plaintiff Western filed a Complaint for Declaratory Judgment (#1) against Selective in Case No. 08-CV-2118, seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 that Western is an excess carrier to Selective and Allianz and has no current obligation to defend the City of Paris, Parrish, or Ray in the Steidl and Whitlock lawsuits. On August 14, 2008, Magistrate Judge David G. Bernthal consolidated 08-CV-2118 with the instant case, 07-CV-2224. Western filed a Cross Motion for Summary Judgment (#84) on May 27, 2009, asking that this court declare that Western is an excess carrier to the primary carriers Selective and Allianz and thus has no current obligation to defend the City of Paris, Parrish, or Ray under its policies of insurance in the underlying litigation.

ANALYSIS

STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, a party "may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56 (a), (b). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Selective's Summary Judgment Motion

Selective argues that it only has a duty to defend or indemnify for occurrences during its policy period of 1999 to 2007. Since the arrest, conviction, and imprisonment of Steidl and Whitlock occurred in 1986 and 1987, Selective's policy period is not implicated. Thus, there is no duty to defend or indemnify Defendants. Defendants counter that the allegations in the underlying

litigation allege multiple actions by McFatridge from 1986 all the way through 2004, including actions that occurred during the 1999-2007 policy period. Defendants charge that on at least two separate occasions during the Selective policy period, affirmative actions were taken by McFatridge, as an agent of the City of Paris, to combat the release of Steidl and Whitlock and thereby increasing their likelihood of remaining incarcerated.

Western concedes that only the alleged torts of malicious prosecution and false imprisonment could trigger Selective's duty to defend, and then only under Coverage B of the Police Professional and Liability policy (which would then implicate the Umbrella policy).[4] However, Western argues that the malicious prosecution and false imprisonment torts did occur during Selective's policy period.

First, Selective argues that malicious prosecution was complete at the moment of Steidl and

---

[4] On page 5 of Western's Cross Motion for Summary Judgment (#84), Western writes "Read as a whole, the allegations of the underlying complaint seek to impose liability against the City of Paris for false imprisonment and malicious prosecution. Therefore, whether certain counts are directed against certain defendants is immaterial to the Court's determination of the duty to defend issue." As the false imprisonment and malicious prosecution claims undergird all the other claims in the complaints, if those occurrences that gave rise to those two claims are not found to have occurred during Selective's policy period, Selective has no duty to defend or indemnify Defendants in the suit.

Also, as noted on pages 33-35 of Selective's Motion for Summary Judgment (#66), the Selective policy only insured the City and those with whom it was in an employer-employee relationship. Ray and Parrish had ceased their employment with the City by the time of Selective's policy period. Further, McFatridge and Eckerty were never City employees and either way, McFatridge stepped down as Edgar County State's Attorney in 1991, although Defendants claim the lawsuits cite McFatridge and the Edgar County State's Attorneys office as "agents" of the City. Nowhere in Steidl or Whitlock's complaints do they make an allegation that Parrish or Ray performed any acts which form the basis of their complaints during Selective's policy period, so therefore the only situation which existed which forms the basis of Steidl's complaint which occurred during Selective's policy period was Steidl and Whitlock's continued imprisonment (although they do allege statements McFatridge made to the press in the 2000s contributed to their continued imprisonment). See TIG Indemnity Co. v. McFatridge, 2007 WL 1063018, at *2 (C.D. Ill. 2007).

Whitlock's conviction and that it did not "occur" during their policy period so as to trigger coverage. However, Defendants and Western counter that the tort of malicious prosecution is not complete until the underlying litigation is resolved in favor of the wronged party, which in Steidl's case would have been 2003, which was during Selective's policy period, thus triggering coverage. There are two viewpoints in this country as to when, for insurance coverage purposes, the tort of malicious prosecution occurs. The Illinois Supreme Court has not yet directly weighed in on the issue. As a federal court analyzing a claim under state law, this court must predict what the Illinois Supreme Court would do, and in making this determination give proper regard to the opinions of Illinois's intermediate courts, but this court's decision will also be informed by the policies underlying applicable legal doctrine, current trends in the law, and decisions of other courts. See City of Erie, Pa. v. Guaranty National Ins. Co., 109 F.3d 156, 159-60 (3rd Cir. 1997).

Although there is no clear agreement on when the tort of malicious prosecution occurs for insurance coverage purposes, the majority of courts have held the tort occurs when the underlying criminal charges are filed. City of Erie, 109 F.3d at 160.[5] Two courts have held that malicious prosecution occurs on the date when the plaintiff receives a favorable termination of the underlying proceeding: the Illinois Appellate Court in Security Mutual Casualty Co. v. Harbor Insurance Co., 382 N.E.2d 1 (Ill. App. Ct. 1978) and the Middle District of Florida in Roess v. St. Paul Fire and Marine Insurance Co., 383 F.Supp. 1231 (M.D. Fla. 1974).

"Courts adopting the majority rule have cited two major principles to explain why the tort of malicious prosecution occurs at the time the criminal charges are filed. One common theme is

---

[5]These courts include the U.S. Eighth Circuit Court of Appeals, the District of Maryland, the Southern District of New York, the Missouri Court of Appeals, the New Jersey Supreme Court, and the California Appellate Court. City of Erie, 109 F.3d at 160.

that the 'essence', 'gist', or 'focus' of malicious prosecution is the filing of the underlying charges. Favorable termination of the criminal action is merely a 'condition precedent' to bringing the action." City of Erie, 109 F.3d at 160. The second theme found in the majority cases is that reliance on the "time of favorable termination" to trigger liability has unwise policy implications, for it allows tortfeasors with information about their own potential liability to shift the burden to unwary insurance companies. The minority rule might well enable plaintiffs to lull an unwary insurer into extending coverage after they perceive an impending difficulty from a suit in which they are already engaged. City of Erie, 109 F.3d at 160, citing Royal Indemnity Co. v. Werner, 979 F.2d 1299, 1300 (8th Cir. 1992).

Selective, in its brief, cites to a case from the Appellate Division of New York, Newfane v. General Star National Insurance Co., 784 N.Y.S.2d 787 (N.Y.A.D. 4 Dept., 2004). In that case, a matter of first impression in New York, the underlying action was brought against the town of Newfane in February 2002 by Thomas Callahan, alleging malicious prosecution. The court noted that Selective Insurance Company, one of the defendants, had an effective date on its personal injury policy, of April 26, 2000. Callahan's complaint alleged that he was arrested, charged, and jailed under a violation of the town's zoning ordinance in June 1989. He was jailed again 1990 on the charge, but his conviction was later reversed on appeal in 1991 on all counts except one. That last remaining count lay dormant until it was dismissed in November 2000.

The sole issue on appeal for the New York Appellate Division was "whether there is coverage for the underlying cause of action for malicious prosecution where the criminal prosecution was initiated before the effective date of the policy but terminated in favor of the accused during the policy period." Newfane, 784 N.Y.S.2d at 791. The court concluded that the date of the

commencement of the criminal prosecution was controlling for insurance purposes and that the most important factor in that determination, besides the fact that it was the majority position nationwide, was that the policy language itself counseled such an outcome. Newfane, 784 N.Y.S.2d at 791.

The court wrote:

> "In referring to the 'offense,' the policy invokes the concept of legal injury or wrong, as evinced by the policy's references to the 'personal injury' being 'caused by an offense' and 'arising out of' an 'offense.' In our view, Callahan was not in any sense legally injured by the Town when the criminal prosecution against him was dismissed on his motion, and the town at that juncture 'committed' no 'offense' against Callahan. In the language of the policy, the 'injury' was not 'caused by,' nor did it 'aris[e] out of,' that dismissal." Newfane, 784 N.Y.S.2d at 792.

The court found the dismissal to be, as the Third Circuit noted in City of Erie, a "condition precedent" to a cause of action for malicious prosecution. It acts to indicate the innocence of the accused and establishes the tort of malicious prosecution of an unfounded charge against an innocent person. On the other hand, to the accused, it makes little difference whether the state or an individual complainant controls the prosecution, because from the accused's standpoint, the injury or offense has been incurred upon the filing of the criminal complaint with malice and without probable cause. Newfane, 784 N.Y.S.2d at 793.

In the Newfane court's view, the offense was committed for malicious prosecution insurance purposes in 1989 when the prosecution was instituted, allegedly without probable cause, as that is the essence of the tort of malicious prosecution. Newfane, 784 N.Y.S.2d at 793. The court found that the legal injury or offense incurred by Callahan in the underlying action was the same

irrespective of whether the criminal prosecution was known to be baseless when it was initiated or only subsequently demonstrated to be lacking in merit. The court concluded that the injury to Callahan was contemporaneous with the initiation of the criminal proceeding against him and was complete long before the inception of Selective's coverage and the termination of the prosecution. Newfane, 784 N.Y.S.2d at 793-94. Malicious prosecution, for purposes of insurance coverage determination, was not a continuing tort, and the policy was to be construed as fixing the point of coverage for malicious prosecution at a readily ascertainable date: the date on which the acts were committed that might result in ultimate liability. Newfane, 784 N.Y.S.2d at 794.

Another case where the majority view is adopted is North River Insurance Co. v. Broward County Sheriff's Office, 428 F.Supp.2d 1284 (S.D. Fla. 2006). In that case, the plaintiff insurance company issued a policy to the defendant sheriff's office covering 1999 to 2002. Two men who were arrested back in the 1980s, but were exonerated and released in 2000 and 2001, respectively, sued the defendants for malicious prosecution. The plaintiff claimed that no bodily or personal injury occurred during the 1999-2002 policy period. The district court noted that Florida courts "follow the general rule that the time of occurrence within the meaning of an indemnity policy is the time at which the plaintiff's injury first manifests." North River Insurance Co., 428 F.Supp.2d at 1289. The district court found the damages "occurred" and manifested itself well before the policy period, writing:

> "Years before the Policy was a glimmer in the Defendants' collective eye, Messrs. Lee and Townsend were allegedly wrongfully deprived of their liberty and falsely imprisoned-and any alleged malicious prosecution resulted in their imprisonment at that time. Not only would it strain logic to hold that a policy could

be applied retroactively to activities undertaken twenty years earlier, but as a matter of public policy, if this Court were to deny Plaintiff's motion, it would be imposing on Plaintiff a risk based on the fortuitous occasion of the date of exoneration as opposed to the date when the damage first manifests itself, *i.e.,* the date of incarceration. While North River has a duty to defend lawsuits against officers for malicious prosecution or false imprisonment claims occurring during the policy period, it is inconceivable that the calculation of the premium that Broward County paid North River in order to purchase the Policy included an analysis of *any* earlier prosecutions in Broward County and the likelihood of malfeasance over the course of those prosecutions. The better rule, and the rule that is consistent with Florida law, is to consider the time of the arrest and incarceration the 'trigger' in both malicious prosecution and false imprisonment cases." North River Insurance Co., 428 F.Supp.2d at 1290.

An Illinois court took the opposite position, adopting what has become the minority position as to when malicious prosecution is said to "occur" for insurance purposes, in Security Mutual Casualty Co. v. Harbor Insurance Co., 382 N.E.2d 1 (Ill. App. Ct. 1978), a case decided by the First District Appellate Court. In that case, the court relied heavily on an earlier Florida federal district court case, Roess v. St. Paul Fire and Marine Insurance Co., 383 F.Supp. 1231 (M.D. Fla. 1974), which had held that the date of favorable termination, rather than the commencement of the malicious underlying action, was the occurrence triggering coverage under the policy. Roess, 383 F.Supp. at 1235. The court then applied Roess to a 1978 Illinois Supreme Court case that laid out the elements of a malicious prosecution claim, which included termination of the underlying proceeding in the plaintiff's favor, and concluded that "[s]ince the successful conclusion of the original action is a prerequisite to maintaining the malicious prosecution suit, the cause of action did

not arise until" the underlying litigation was concluded in the plaintiff's favor. Security Mutual Casualty Co., 382 N.E.2d at 6.

However, this appellate court decision was later overturned on other grounds by the Supreme Court of Illinois. The court held that the dispute between the insurance companies should have gone to arbitration and that "[i]n determining the validity of Harbor's claim the appellate court exceeded the scope of review and, in so doing, erred." Security Mutual Casualty Co. v. Harbor Insurance Co., 397 N.E.2d 839, 842 (Ill. 1979).

The court has reviewed and surveyed the case law, and finds the majority position more persuasive and preferable. The majority opinion appears to be gaining momentum nationwide in various jurisdictions, while the minority opinions rests on two cases from the 1970s. See City of Erie, 109 F.3d at 160 (cases cited for the majority position range from 1967 to 1992, including City of Erie itself from 1997).

Further, the majority position itself is more persuasive. Under the facts of this case, the offense was committed for malicious prosecution insurance purposes when the prosecution was instituted in 1986, allegedly without probable cause, as that is the essence of the tort of malicious prosecution. See Newfane, 784 N.Y.S.2d at 793. Selective's policy at issue covered the insured for personal injury that "occurs" during their policy period. Here, the injury to Steidl and Whitlock was contemporaneous with the initiation of the criminal proceeding against them and was complete long before the inception of Selective's coverage and the termination of the prosecution. See Newfane, 784 N.Y.S.2d at 793-94. Years before Selective issued its policy, Steidl and Whitlock were allegedly wrongfully deprived of their liberty and falsely imprisoned- and any alleged malicious prosecution resulted in their imprisonment at that time. See North River Insurance Co., 428

F.Supp.2d at 1290. To adopt the minority rule would strain logic, as it would hold that a policy could be retroactively applied to activities undertaken twenty years earlier, and would impose upon Selective a risk based on the fortuitous date of exoneration as opposed to the date when the damage first manifested itself, *i.e.*, the date of arrest, arraignment or incarceration. See <u>North River Insurance Co.</u>, 428 F.Supp.2d at 1290. While Selective has a duty to defend lawsuits against Defendants for malicious prosecution claims occurring during the policy period, it is inconceivable that the calculation of the premium that Defendants paid Selective in order to purchase the Policy included an analysis of *any* earlier prosecutions by Defendants and the likelihood of malfeasance over the course of those prosecutions. See <u>North River Insurance Co.</u>, 428 F.Supp.2d at 1290.

There are other problems with the minority position as well. While it is true that the only Illinois case on record dealing squarely with this issue has come down in favor of the minority position, the case is of questionable precedential value. First, the case is over 30 years old, no other Illinois cases have cited it or adopted its holding since 1979, and it is going against a clear national trend. Second, and most important, its value as precedent is itself suspect. The Illinois Supreme Court overturned the case on another issue, whether there should have been arbitration between the parties, and found that the appellate court had "exceeded the scope of its review." <u>Security Mutual Casualty Co.</u>, 397 N.E.2d at 842. The appellate court should have never even reached the issue of malicious prosecution. On these issues this court must follow Illinois Supreme Court precedent, but not the precedent of one of the appellate courts, the authority of which precedent is shaky at best.

This court believes the majority position to be more persuasive and to reflect better the wishes of the parties as embodied in Selective's insurance policy. Therefore, the tort of malicious prosecution occurred at the time the criminal charges were filed, in 1986, which was outside of

Selective's policy period of 1999-2005.

Next, the court will consider the false imprisonment tort. False imprisonment is included as Count V in Steidl's lawsuit, and Count III in Whitlock's lawsuit. It is a claim under the laws of the State of Illinois, therefore Illinois case law on the false imprisonment tort will prevail. "In Illinois, '[t]o state a cause of action for false imprisonment, the plaintiff must allege that his personal liberty was unreasonably or unlawfully restrained against his will and that defendant(s) caused or procured the restraint.'" Arthur v. Lutheran General Hospital, Inc., 692 N.E.2d 1238, 1243 (Ill. App. Ct. 1998). False imprisonment is "complete after 'even a brief restraint on the plaintiff's freedom," and the plaintiff may recover nominal damages." Arthur, 692 N.E.2d at 1242, quoting W. Keaton, Prosser & Keeton on Torts § 11, at 47 (5th ed. 1984). As to when false imprisonment occurs for insurance purposes, the North River court found that it was best, like in malicious prosecution, to consider the time of arrest and incarceration as the trigger for an occurrence during a policy period. North River Insurance Co., 428 F.Supp.2d at 1290.

Under the undisputed facts present in this case, both Steidl and Whitlock were arrested and imprisoned in 1986 and 1987. Under the law as it is Illinois, the tort was completed at that time. See Arthur, 692 N.E.2d at 1242. The alleged actions of McFatridge in the early 2000s that supposedly contributed to Steidl and Whitlock remaining in prison are irrelevant as to when the tort can be said to have "triggered" policy coverage. For many of the same reasons the court employed in its malicious prosecution analysis, the court finds the insurance coverage was triggered when the two were arrested and their freedom restrained in 1986 and 1987, during Western's policy period, not Selective's. The false imprisonment tort, therefore, did not occur during Selective's policy period and Selective is not bound to defend or indemnify Defendants on that count.

As none of the counts, as alleged in Steidl and Whitlock's complaints, occurred for insurance purposes during Selective's policy period, Selective has no duty to defend or indemnify Defendants. Selective's Motion for Summary Judgment (#66) is GRANTED in full. This court notes that it reached the same conclusion in a similar case arising out of the same underlying litigation, <u>TIG Indemnity Co. v. McFatridge</u>, 2007 WL 1063018 (C.D. Ill. 2007).

<u>Allianz</u>

As Allianz's policy period lasted from 1995/96 to 1999, it likewise had no "occurrences" during the policy period so as to give rise to a duty to defend or indemnify Defendants. Therefore, Allianz's Motion for Summary Judgment (#94) is GRANTED in full.

<u>Western</u>

Western's Cross Motion for Summary Judgment and in Opposition to Selective Insurance Company's Motion for Summary Judgment (#84) was predicated on Western being considered an excess carrier to Selective and Allianz's primary carrier status. However, as the court has found that Selective and Allianz have no duty to defend or indemnify Defendants in the lawsuit, that leaves Western was the primary carrier. Therefore, Western, of the three insurance companies, has the sole duty to defend and indemnify Defendants in the Steidl and Whitlock litigation. Western's Cross Motion for Summary Judgment and in Opposition to Selective Insurance Company's Motion for Summary Judgment (#84) is DENIED in full.

IT IS THEREFORE ORDERED:

(1) Selective's Motion for Summary Judgment (#66) and Allianz's Motion for Summary Judgment (#94) are both GRANTED.

(2) Western's Cross Motion for Summary Judgment and in Opposition to Selective Insurance

Company's Motion for Summary Judgment (#84) is DENIED.

    (3) Selective has no duty to defend or indemnify the Steidl and Whitlock litigation.

    (4) Allianz has no duty to defend or indemnify the Steidl and Whitlock litigation.

    (5) This case is terminated.

    ENTERED this 27th day of January, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE